## Commonwealth, by Truscott et al., Appellants, *v.* Binenstock.

Argued January 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles E. Kenworthey,* with him *William N. Trinkle, Schnader, Kenworthey, Segal & Lewis* and *Truscott, Trinkle & Wright,* for appellants.

*Robert T. McCracken,* with him *Michael von Moschzisker, Richard E. McDevitt, Emanuel Moss* and *Marshall A. Coyne,* for appellee.

OPINION BY MR. JUSTICE LINN, March 22, 1948:

*Tucker v. Binenstock,* 310 Pa. 254, 165 A. 247 (1933) was a proceeding in equity by Tucker for an accounting from Binenstock, the present defendant, of money received by him in transactions considered in that case. We held that the transactions were illegal and on that account equity would not aid Tucker in collecting from Binenstock any part of the unlawful gain. It appeared that Tucker and Binenstock had caused New Century Realty Company to be incorporated in 1923 and that it

had taken title to a brewery; that they had caused Atlantic Brewing Company to be incorporated and that the realty company had leased the brewery to the brewing company, and that the brewing company had made and sold beer containing more alcohol than allowed by law. The illegal business had been conducted from September, 1923, to November, 1926, the period for which Tucker desired the accounting. It appeared in that proceeding that the brewing company had made large profits in the manufacture and sale of illegal beer and had become indebted to the realty company for rent. In the opinion of this Court disposing of the case it was said, "So here the fact that the illegal profits were received by the realty company in the form of rent will not be permitted to disguise the fact that both corporations were owned by the same individuals, who cannot, by reliance upon the fiction of corporate entity, convert illegal gains into legal rents." From that litigation it was clear that Binenstock had received money to which he was not entitled as owner. We decided that the money had been unlawfully acquired; neither Tucker nor Binenstock was the lawful owner. The Commonwealth thereafter claimed the money.

To enforce the claim of the Commonwealth, the present appellants, escheators appointed by the Secretary of Revenue, then filed their petition in the court below praying for the escheat of the money in the hands of Binenstock. He filed preliminary objections which the court sustained on the ground that the petition was directed against a number of funds said to have belonged to two different corporations and a partnership instead of against a fund which had belonged to a single owner. We were required to reverse that judgment for the reason stated in the opinion reported in 348 Pa. 610, 36 A. 2d 333, to the effect that the petition stated a prima facie case within the Act of May 2, 1889, P. L. 66, PS 333, as amended. Defendant then answered the petition and the case was tried. The learned trial judge held that

petitioners had not proved their allegations and dismissed the petition. The judgment must be reversed.

The Act of May 2, 1889, P. L. 66, is entitled, "Defining and regulating escheats in cases where property is without a lawful owner, and providing for more convenient proceedings relative to the same." It was amended by the Act of May 11, 1911, P. L. 281, 27 PS 333. Section 3 of the amended Act reads as follows: "That whensoever any trustee or other person is or shall be seized of any property or estate, real or personal, in a fiduciary capacity, and shall file an account of the same in any court of this Commonwealth and whensoever it shall appear that the cestui que trust, or beneficial owner, of said property or effects, or any part thereof, has been unknown for a period of seven years, and still remains unknown, then and in such case so much of said property or effects as belonged to said unknown cestui que trust, or beneficial owner, shall escheat to the Commonwealth, subject to all legal demands on the same; and whensoever the trustee or trustees under a dry trust, and whensoever on the termination of an active trust, or afterwards, the trustee or trustees thereunder is, are, or shall be seized or possessed of any property or estate, real or personal, either the subject of the trust or in any wise arising from the possession of the trust property, or the exercise of the trust, or resulting after the termination of the trust and before distribution is actually made under the terms of the trust or decree of court, from rents, accretions, profits, or interest from, of, or on the trust property, or any part thereof, which property or estate is or shall be without a lawful owner, such property or estate shall escheat to the Commonwealth, subject to all legal demands on the same."

We shall not recite the averments of the petition to show that a case within the Act is alleged because in his opinion, filed in the court below, the learned trial judge said, "undoubtedly if petitioner could prove those

allegations a case would be made out." We may, however, add, in view of appellee's argument, that the averment that defendant received the money as agent or trustee is an averment that he received it in a fiduciary capacity. Section 190, Restatement, Restitution, provides: "Where a person in a fiduciary relation to another acquires property and the acquisition or retention of the property is in violation of his duty as fiduciary he holds it upon a constructive trust for the other."

The principal assignments of error divide themselves into two classes: those complaining that the learned trial judge sustained objections to the reading in evidence (1) of parts of the petition as admissions because not sufficiently denied by the answer, and (2) of statements by the defendant made in other litigation to which he was a party. Petitioners offered no other evidence and defendant offered none.

1. It may aid in understanding petitioners' first contention that the learned court erred in excluding as admissions, inadequately answered averments in the petition, if we quote a typical paragraph and the answer to it. The third paragraph of the petition avers: "3. That the moneys sought to be escheated as hereinafter set forth were received and retained by the said Joseph Binenstock, as agent or trustee for the Standard Brewing Company, the Atlantic Brewing Company, and the New Century Realty Company, out of the proceeds of the business of the Standard Brewing Company and the Atlantic Brewing Company and out of rents which were paid to him for the New Century Realty Company out of proceeds of said business. The Standard Brewing Company was a partnership and the Atlantic Brewing Company and the New Century Realty Company were corporations organized under the laws of the State of Pennsylvania. Said moneys were derived and received from illegal business and illegal transactions in violation of the Prohibition Laws of the United States and of the Commonwealth of Pennsylvania, as hereinafter

more particularly set forth, and are without rightful or lawful owners."

The third paragraph of the answer stated: "3. It is denied that the respondent ever received any moneys as agent or trustee for the Standard Brewing Company, The Atlantic Brewing Company and the New Century Realty Company, either out of the proceeds of any business carried on by any of the foregoing organizations or otherwise. It is denied that any partnership existed under the name of the Standard Brewing Company. It is admitted that the Atlantic Brewing Company and the New Century Realty Company were corporations organized under the laws of the State of Pennsylvania. It is denied that any moneys were received by respondent as agent or trustee for any of the foregoing organizations, whether said moneys were derived from illegal business transactions or otherwise."

It will be observed that paragraph 3 averred a number of facts, inter alia: 1. defendant (a) received and (b) retained money; 2. he did so as agent or trustee for named parties; 3. the money was the proceeds (a) of the brewing business and (b) of rents; 4. an illegal business and 5. therefore the money was without a rightful or lawful owner.

Defendant's answer to those averments of fact is nothing more than a general denial that he received money as agent or trustee, which is a mere denial of the capacity in which money was alleged to have been received, while no issue is made with respect to the other averments. He should have denied specifically every fact to be put in issue, this is, every fact he did not wish to be taken as an admission by him. He does not deny that he received and retained the money; those facts are therefore admitted. He denies the capacity in which he received and retained it without specifying, as he should have done, the circumstances in which it was received and retained, so that the circumstances might be ascertained by the trial. That he received money in the ap-

parently illegal transaction appears in the following statement of counsel for defendant made during the trial, "There isn't the slightest doubt that this man received in his position as treasurer of the New Century Realty Company certain sums of money. That is not receiving it as agent or trustee for this corporation. It is receiving rents in the due course of business as treasurer of the New Century Realty Company and they used that rent to pay taxes, mortgage interest, insurance and repairs. He will testify to that. There isn't any doubt about it." Why was that fact not set forth in the answer in response to paragraph 3 of the petition?

While proceedings under the Escheat Act of 1889, as amended, are not like the trial of an ordinary action at law or in equity, we think the same particularity of pleading is required and that what would be an insufficient denial in an affidavit of defense or in an answer in equity, must be regarded as insufficient to prevent an averment of fact being taken as an admission in an answer in the escheat proceeding. All the considerations which support the rule in either of those two classes of action require that the same rule be applied in this class of proceeding. It has long been the rule that a general denial is not sufficient in an affidavit of defense. In equity the practice is governed by rule 52 which provides: "It shall not be sufficient for defendant in his answer to deny generally any of the averments of the bill; he must specifically admit, deny or qualify,—in the latter event particularly setting forth of what the qualification consists,—each and every allegation of the bill, in paragraphs corresponding to the numbers thereof. Averments of the bill (other than those of value or amount of damages), not substantially answered, shall be taken as admitted, by all those who were served or appeared in the suit, except infants, lunatics or other persons non compos and not under guardianship. . . ." While Pa. R. C. P. No. 1029 was not in effect when the answer in this case was filed, it may be noted that the

rules referred to above have been carried into Rule 1029 which provides: "Rule 1029. Denials. Demand of Proof. Effect of Failure to Deny or Demand Proof. (a) A responsive pleading shall admit or deny the averments of fact in the preceding pleading or part thereof to which it is responsive. Admissions and denials in a responsive pleading shall refer specifically to the paragraph in which the averment admitted or denied is set forth. (b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivision (c) of this rule, shall have the effect of an admission."

The learned trial judge sustained defendant's objections to a number of petitioners' offers of proof of facts that were not sufficiently denied by the answer. We are of opinion that the averment, for example, that defendant as agent or trustee for the parties mentioned received and retained money is not adequately answered by the general denial that he "received no moneys as agent or trustee for" the parties. If he received money for the account of any of them (as his counsel admitted at the trial) he should have stated the fact, leaving it to be determined in the trial in what capacity and with what effect the money was received. The learned trial judge erroneously sustained the objections: compare *Buehler v. U. S. Fashion Plate Co.*, 269 Pa. 428, 112 A. 632; *Bank v. Sunseri*, 311 Pa. 114, 166 A. 573; *Queen-Favorite B. & L. Ass'n v. Burstein*, 310 Pa. 219, 222, 165 A. 13; *George v. George*, 318 Pa. 203, 205, 178 A. 25; *Fulton Farmers Ass'n v. Bomberger*, 262 Pa. 43, 104 A. 806; *Welch v. Sultez*, 338 Pa. 583, 586, 13 A. 2d 399; *Schuey v. Schaeffer*, 130 Pa. 16, 18, 21, 18 A. 544. See also Clark, *Code Pleading, Negative Pregnants*, section 90, page 390 et seq., and cases cited in his notes to that subject.

It is unnecessary to refer separately to all the assignments complaining of the exclusion of petitioners' offers of parts of the petition not denied by defendant's

answers. With one exception we sustain them on the ground that the averments were not sufficiently denied and were therefore admitted. As there seems to be some confusion in the printed record which does not clearly show what took place, we cannot consider the refusal to permit the petitioners to read in evidence the second paragraph of the petition. At the top of page 29a plaintiffs' counsel said, "I haven't offered that part in which I allege that the moneys are escheatable. I omitted that from my offer because that is a conclusion of law in paragraph 2 and it is denied." Apparently the entire paragraph was read. It would seem from page 28a that if it had been understood that no more was offered than the part so referred to there would have been no objection. This assignment of error is dismissed because we are not certain of the record.

Petitioners offered as an admission the following portions of paragraph 10 of the petition: "That from the commencement of the business of the said partnership and corporations on or about September 12, 1923, until the cessation thereof on or about November 2, 1926, all the moneys that were payable as rent to the New Century Realty Company by the Standard Brewing Company and by the Atlantic Brewing Company and all proceeds of the sale of beer made, brewed and sold by the said Standard Brewing Company and the said Atlantic Brewing Company to their respective customers were paid to and received by the said Joseph Binenstock . . . At no time, however, has the said Joseph Binenstock ever accounted for or paid the said moneys to the said Companies, or any of them, for whom he thus received the same, as such agent or trustee, but on the contrary, has retained and still retains the said moneys for which he thus could have been required by the said Standard Brewing Company, Atlantic Brewing Company and the New Century Realty Company to account and to pay to them had it not been for the fact that all of the said moneys were derived and received from their illegal

business and illegal transactions in violation of the Prohibition Laws of the United States and of the Commonwealth of Pennsylvania."

It is to be observed that in reading that portion of paragraph 10, counsel omitted from the averment of the petition the words that Binenstock received the money "in the capacity of agent or trustee for each of said companies [naming them]."

The corresponding paragraph in the answer is as follows: "10. It is denied that either between the dates referred to in the petition, to wit, from September 12, 1923, until November 2, 1926, or at any other time, were any proceeds of the sale of merchandise by any of said companies, or any rental payable to the New Century Realty Company, paid to or received by this respondent in the capacity of agent or trustee for any of said companies. It is admitted that this respondent has never accounted for or paid any moneys to any of the said companies which he is alleged to have received as agent or trustee for the same, and it is denied that he retains any moneys belonging to any of the said companies either as agent or trustee, or in any other capacity."

Petitioners contend that the evidence should have been received as "an admission that he, Binenstock, received moneys in some other capacity." The learned court sustained the objection. We must sustain this assignment of error as well as all the assignments of this class for the reason stated above.

2. A second class of assignments may also be considered together. As proof of facts averred in the petition, the petitioners offered statements made by the defendant, Binenstock, in other litigation in which he was a party and in which he appeared and participated. Objections to these statements were sustained, "unless," as the learned court stated when one of the offers was made, "you first confront him [Binenstock] with it and ask him if he didn't so testify." The rule is otherwise. Among the cases quoted in support of his exclusion of

Binenstock's evidence in other cases, are *American Trust Co. v. Kaufman,* 287 Pa. 461, 135 A. 210, and *Marcinkiewicz v. Kutawich,* 87 Pa. Superior Ct. 260. The excluded statements in those cases were statements by witnesses; they were not statements made by a party in another case. A distinction has been taken between the use of evidence given by witnesses in other litigation and evidence by parties to litigation to be used subsequently against them in other litigation. "In Kreiter v. Bomberger, 82 Pa. 59, at p. 61, Mr. Justice SHARSWOOD said : 'It is clear that though a party has been examined in his own behalf as a witness, his admissions out of court, though contradicting his evidence, are admissible without having first called his attention to them, as is necessary in the case of other witnesses. Such admissions constitute independent evidence of themselves, and are not admissible merely for the purpose of impeaching the credibility of the party as a witness, although incidentally they may also have that effect.' " See *Kimble v. Wilson et al.,* 352 Pa. 275, 284, and cases cited on pages 284 and 285, 42 A. 2d 526; *Pittsburgh v. Railways Co.,* 234 Pa. 223, 232, 83 A. 273; *James Bonar and Co. v. South Penn Oil Co.,* 47 Pa. Superior Ct. 315, 317; 4 Wigmore, Evidence (3d ed. 1940) section 1064. Petitioners' offers of the parts of Binenstock's testimony given in other proceedings should have been received; it was error to exclude them merely because he was not first called and confronted with his statements.

The judgment is reversed and a new trial is awarded.